UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KIRSTIE M.,

                              Plaintiff,

             v.

KILOLO KIJAKAZI[1] Commissioner of
Social Security,

                            Defendant.
_____

**DECISION
and
ORDER**

**21-CV-411LGF**
(**consent**)

APPEARANCES:           LAW OFFICES OF KENNETH HILLER, PLLC
                           Attorneys for Plaintiff
                           KENNETH R. HILLER, and
                           ANTHONY JOHN ROONEY, of Counsel
                           6000 North Bailey Avenue
                           Suite 1A
                           Amherst, New York  14226

                           TRINI E. ROSS
                           UNITED STATES ATTORNEY
                           Attorney for Defendant
                           Federal Centre
                           138 Delaware Avenue
                           Buffalo, New York  14202
                                 and
                           JESSAMYN LYNETTE HANNA
                           Special Assistant United States Attorney, of Counsel
                           Social Security Administration
                           Office of General Counsel
                           6401 Security Boulevard
                           Baltimore, Maryland  21235

---

[1] Kilolo Kijakazi became the Commissioner of the Social Security Administration on July 9, 2021, and pursuant to Rule 25(d) of the Federal Rules of Civil Procedure is automatically substituted as the defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On April 6, 2023, the parties to this action, consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned.  (Dkt. 11).  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on February 12, 2022 (Dkt. No. 8), and by Defendant on July 6, 2022 (Dkt. No. 10).

## BACKGROUND

Plaintiff Kirstie M. ("Plaintiff"), brings this action under Title II of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application ("application") filed with the Social Security Administration ("SSA"), on August 18, 2013, for Disability Insurance Benefits under Title II of the Act ("SSDI" or "disability benefits").  Plaintiff alleges she became disabled on May 19, 2012, based on six herniated discs in her spine with other suspected disc herniations, two aggravated sacroiliac ("SI") joints with shooting pain down her legs, chronic pain, compressed nerve in midback, numbness in arms, hands, legs and feet, depression, anxiety issues, muscle spasms, hip displacement on both left and right hips, and legs buckling without warning.  AR[2] at 18, 325, 346, 388, 1026. Plaintiff's application was denied on July 3, 2014, AR at 16, 238-41.  At Plaintiff's timely request, AR at 242-43, on January 10, 2017, a hearing commenced in Buffalo, New York before Administrative Law ("ALJ") Judge Eric L. Glazer ("ALJ Glazer").  AR at 193-226.  Plaintiff, represented by Jeanne Murray, Esq. ("Murray"), appeared and gave testimony at the hearing which was continued to allow Plaintiff to obtain and submit

---

[2] References to "AR" are to the Bates-stamped pages of the Administrative Record electronically filed by Defendant on September 16, 2021 (Dkt. 6).

additional medical records.  On June 19, 2017, the hearing continued before ALJ Stephen Cordovani ("ALJ Cordovani" or "the ALJ").  AR at 139-92.  Appearing and testifying at the hearing on June 19, 2017, were Plaintiff, again represented by Murray, as well as vocational expert ("VE") Jay Steinbrenner ("the VE").

On August 21, 2017, ALJ Cordovani issued a decision denying Plaintiff's claim ("the first ALJ decision"), AR at 13-33, which Plaintiff appealed to the Appeals Council, AR at 320-23.  On March 27, 2018, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the first ALJ decision the Commissioner's final decision at that time.  AR at 1-7.  In denying Plaintiff's request for review of the first ALJ decision, the Appeals Council acknowledged receipt of additional evidence, but did not consider the newly submitted evidence because it did not pertain to the relevant period, *i.e.*, prior to December 31, 2015, Plaintiff's date last insured for purposes of SSDI.  AR at 2.

On November 19, 2018, Plaintiff commenced an action seeking judicial review of the first ALJ decision, *Myrick v. Comm'r of Soc. Sec.*, 18-CV-1310-TPK (W.D.N.Y.).  On December 5, 2019, United States Magistrate Judge Terence P. Kemp, acting with the consent of the parties, issued an Opinion and Order remanding the matter to the ALJ for further proceedings including completing the record and a new hearing.  *Myrick v. Comm'r of Soc. Sec.*, 2019 WL 6654151 (W.D.N.Y. December 5, 2019).

On November 16, 2020, a new hearing was held in by telephone before ALJ Cordovani in Buffalo, New York.  AR at 1046-84.  Plaintiff, represented by Anthony Demarco, Esq., appeared and gave testimony, and testimony was also given by VE Larry Takki ("VE Takki"), and impartial medical expert Julian Melamed, M.D. ("Dr.

Melamed"), AR at 1051-52, 1591-92. On November 30, 2020, ALJ Cordovani issued a decision denying Plaintiff's claim ("the second ALJ decision"), AR at 1023-45. Because Plaintiff did not appeal the second ALJ decision to the Appeals Council, the second ALJ decision became the final decision subject to judicial review on January 30, 2021, *i.e.*, 61 days after the second ALJ decision was issued. *See* 20 C.F.R. § 404.984. On March 22, 2021, Plaintiff commenced the instant action seeking review of the second ALJ decision.

On February 12, 2022, Plaintiff filed a motion for judgment on the pleadings (Dkt. 8) ("Plaintiffs' Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 8-1) ("Plaintiff's Memorandum"). On July 6, 2022, Defendant filed a motion for judgment on the pleadings (Dkt. 10) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Rule 5.5 (Dkt. 10-1) ("Defendant's Memorandum"). Neither Plaintiff nor Defendant filed any replies. Oral argument was deemed unnecessary.

Based on the foregoing, Plaintiff's Motion is DENIED, Defendant's Motion is GRANTED and the Clerk of the Court is directed to CLOSE the file.


## FACTS[3]

Plaintiff Kirstie M. ("Plaintiff"), born on November 16, 1978, was 33 years old as of May 19, 2012, her alleged disability onset date ("DOD"), and 37 years old as of December 31, 2015, Plaintiff's date last insured for purposes of obtaining SSDI benefits.

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those facts necessary for determining the pending motions for judgment on the pleadings.

AR at 346, 379, 1026.  Plaintiff graduated from high school and completed two years of college.  AR at 389.  Plaintiff lives in her sister's house with family including her twin sister and brother-in-law, Plaintiff's six-year old daughter and eight-year old son, and her sister's three-year old daughter.  AR at 349, 1062.  Plaintiff shares custody of her two children with her ex-husband with the children living with Plaintiff five days a week and with Plaintiff's ex-husband two days a week.  AR at 1065.

Plaintiff has past relevant work experience as a claims service representative for an automobile insurance company, a dancer/entertainer in a bar, a cashier/stocker in a grocery store, and cashier/food preparer at a fast food restaurant.  AR at 354-71.  It is undisputed that Plaintiff has degenerative disc disease of her cervical, thoracic and lumbar spines, and that pain from that condition caused Plaintiff to stop working. Plaintiff maintains her condition first bothered her on January 31, 2011 when she injured her back while working out in a gym lifting weights, but Plaintiff did not seek treatment for the injury until November 21, 2011.  AR at 596.

Plaintiff prepares simple meals, grocery shops, takes care of her children and cat, does light housekeeping including wiping down counters and washing some dishes, but cannot bend to load the dishwasher, vacuum, do laundry, mop, clean bathtubs, take out the trash, or do any yard work.  AR at 350-52.  Plaintiff's fiancé and her fiancé's teenage daughter helps with these tasks as well as with meal preparation.  *Id*.  Plaintiff can engage in personal care, including dressing, bathing, grooming, shaving, feeding herself, and using the toilet, but needs some assistance when her back is out.  AR at 350-51.  Plaintiff can go outside, but does not go out by herself when her back is out. AR at 352.  Plaintiff has a driver's license and drives to physical therapy and doctor

appointments, and Plaintiff also travels by walking, and in a vehicle as a passenger.  AR at 352-53.  Socially, Plaintiff prefers friends visit her, and usually talks on the telephone and connects without others through the computer.  AR at 354.  Plaintiff reports difficulties with lifting, standing, and walking, all of which exacerbate her pain, AR at 354, can only sit in a semi-reclined position, AR at 355, cannot kneel or squat, has trouble with stairs, it sometimes hurts to reach and use her hands, and it can be difficult for Plaintiff to talk through her pain.  AR at 355.  Because of her impairments, Plaintiff has used a wrist splint, maternity back support and a wheelchair, although sitting in the latter aggravated Plaintiff's back.  AR at 355-56.

Since 2004, Plaintiff has received treatment for cervicalgia (neck pain) and low back pain from Donald E. Gullickson, M.D. ("Dr. Gullickson"), her primary care physician ("PCP") at Northtowns Medical Group, P.C. ("Northtowns Medical").  AR at 562-83, 648-57, 899-925, 1487-1518.  In connection with Plaintiff's disability benefits application, on May 21, 2014, Plaintiff underwent both an internal medicine examination by Donna Miller, D.O. ("Dr. Miller"), AR at 588-91 ("Dr. Miller's opinion"), and a psychiatric evaluation by Susan Santarpia, Ph.D. ("Dr. Santarpia").  AR at 584-87 ("Dr. Santarpia's opinion").  Dr. Miller diagnosed Plaintiff with chronic low back pain, herniated discs, chronic neck pain, and pregnancy with expected due date of June 10, 2014, and assessed Plaintiff with mild to moderate limitations to repetitive lifting, bending, carrying, pushing, and pulling.  AR at 591.  Dr. Santarpia diagnosed Plaintiff with a need to rule out an adjustment disorder with anxiety, and gestational diabetes per Plaintiff's self-report, and assessed Plaintiff with the ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention, concentration,

and a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, relate adequately with others, and appropriately deal with stress within normal limits.  AR at 586-87.  Dr. Santarpia further opined that Plaintiff's psychiatric problems would not "significantly interfere with Plaintiff's ability to function on a daily basis."  AR at 586.  Plaintiff's medical records were reviewed on July 13, 2014, by State Agency evaluating psychiatrist H. Tzetzo, M.D. ("Dr. Tzetzo"), who assessed Plaintiff with affective disorders and anxiety-related disorders which Dr. Tzetzo opined caused Plaintiff mild difficulties in maintaining concentration, persistence or pace, but no limitations with regard to activities of daily living, or maintaining social functioning, nor had Plaintiff experienced any episode of decompensation of an extended duration.  AR at 230-32 ("Dr. Tzetzo's opinion").  Plaintiff's medical records were also reviewed on July 3, 2014, by State Agency disability examiner J. Poeller, a single decision maker ("SDM"),[4] who found Plaintiff, despite her physical impairments that produced exertional limitations of occasional (cumulatively, 1/3 or less of an 8-hour day) lifting and carrying of 20 pounds, frequent (cumulatively, between 1/3 to 2/3 of an 8-hour day) lifting and carrying of 10 pounds, standing, walking, or sitting 6 hours in an 8-hour day, but no other exertional limitations and no postural, manipulative, visual, communicative or environmental limitations, remained capable of performing her past relevant work ("PRW").  AR at 232-34 ("SDM Poeller's opinion").

---

[4] "'SDMs are non-physician disability examiners who may make the initial disability determination in most cases without requiring the signature of a medical consultant.'" *Mae B. v. Comm'r of Soc. Sec.*, 2021 WL 2643177, at *5 (W.D.N.Y. June 28, 2021) (quoting *Palmer v. Berryhill*, 2019 WL 1315052, at *3 (W.D.N.Y. Mar. 22, 2019)).  Further, "it is error for an ALJ to give weight to the opinion of a SDM."  *Id.* (citing *Curtis v. Astrue*, 2012 WL 6098258, at *6 (N.D.N.Y. Oct. 30, 2012), *report and recommendation adopted*, 2012 WL 6098256 (N.D.N.Y. Dec. 7, 2012) (noting that in 2010, the Chief ALJ for the Social Security Administration ("SSA") issued a memorandum citing SSA's Program Operations Manual System ("POMS") Instruction DI 24510.050C and instructing all ALJs that RFC determinations made by SDMs should not be afforded any evidentiary weight at the administrative hearing level)).

Upon remand from this court, ALJ Cordovani held a new hearing at which Dr. Melamed appeared and testified.  AR at 1052-62.  In his second ALJ decision, ALJ Cordovani relied on Dr. Melamed's hearing testimony in formulating the RFC ("residual functional capacity") restricting Plaintiff to a limited range of sedentary work such that Plaintiff was not disabled through December 31, 2015, Plaintiff's date last insured.  AR at 1036-37.

## DISCUSSION

### 1.   Standard and Scope of Judicial Review

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's

function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id*. "Congress has instructed . . . that the factual findings of the Secretary,[5] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original). "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'" *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

## 2.    Disability Determination

Although Plaintiff seeks only SSDI benefits, the definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits. *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a). The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the

---

[5] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" or "RFC" which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of

proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v.*
*Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because
if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases
and the claimant is not eligible for disability benefits, but if the claimant meets the
criteria for the third or fourth step, the inquiry ceases with the claimant eligible for
disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

### 3.    Analysis of Plaintiff's Arguments

In the instant case, ALJ Cordovani found Plaintiff meets the insured status
requirements for SSDI through December 31, 2015, AR at 1028, and that Plaintiff has
not engaged in substantial gainful employment ("SGA"), since May 19, 2012, the
alleged DOD through the date last insured.  *Id*.  ALJ Cordovani found Plaintiff has the
severe impairments of degenerative disc disease of the cervical, thoracic, and lumbar
spines because these impairments significantly limit Plaintiff's ability to do basic work
activities and have lasted or can be expected to last at least 12 months, AR at 1028, but
that there was no evidence that Plaintiff's other impairments supported by the medical
records, including hip pain, and right ankle and heel pain have more than a minimal
effect on Plaintiff's ability to do basic work activities and are thus non-severe
impairments, *id*. at 1028-29, that Plaintiff's left shoulder pain meets the 12-month
durational requirement, *id*. at 1029, or that Plaintiff suffered from migraine headaches
prior to her date last insured of December 31, 2015.  *Id*.  Further, Plaintiff's medically
determinable mental impairments of adjustment disorder with anxiety and generalized
anxiety disorder with panic disorder, neither singly, nor in combination posed more than
a minimal limitation to Plaintiff's ability to perform basic work activities and were

therefore nonsevere.  *Id*. at 1029-31.  The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpt. P, Appx. 1.  *Id*. at 1031-32.  ALJ Cordovani further determined Plaintiff retains the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with limitations including that in an 8-hour workday, she can continuously sit for two to three hours and six hours total, continuously walk up to 15 to 20 minutes and continuously stand for 30 minutes, and in total can stand and walk in combination for two hours, should not kneel, crouch, or crawl, can stoop only to 90 degrees, occasionally climb ramps and stairs, cannot work at unprotected heights or around moving mechanical parts, can never climb ladders, ropes, or scaffolds, and can frequently, as opposed to constantly, perform extension, flexion and rotation of the head and neck, *id*. at 1032-36, and that such restrictions would prevent Plaintiff from performing her PRW as a general clerk and dancer.  AR at 1037.  The ALJ further found that given Plaintiff's RFC, education, and ability to communicate in English, with transferability of skills irrelevant to the disability determination, the SSA's Medical-Vocation Rules set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 ("the Grids"), supported a finding that Plaintiff is not disabled, *id*. at 1037 (citing 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201.28, and that through the date last insured, there were jobs existing in significant numbers in the national economy that Plaintiff is capable of performing including as an addresser, table worker, and touch up screener.  *Id*. at 1037-38.  Accordingly, the ALJ found Plaintiff not disabled as defined in the Act from the alleged DOD of May 19, 2012 through December 31, 2015, the date Plaintiff was last insured for SSDI eligibility.  *Id*. at 1038.

In support of her motion, Plaintiff argues that remand is warranted because in formulating Plaintiff's RFC, the ALJ erred in rejecting the opinion of Dr. Gullickson who is both Plaintiff's treating physician and primary care physician, in violation of the so-called "treating physician rule" set forth at 20 C.F.R. § 404.1527(c)(2), Plaintiff's Memorandum at 11-15, and in failing to incorporate additional breaks into the RFC determination. *Id*. at 16-18. Defendant argues the ALJ formulated an RFC that is supported by substantial evidence in the record and did not violate the "treating physician rule" by failing to give controlling weight to, and pattern the RFC determination after Dr. Gullickson's opinion, Defendant's Memorandum at 7-13, ALJ Cordovani properly evaluated the medical opinion evidence in accordance with the applicable regulations and the record, *id*. at 13-21, and maintains the ALJ was not obligated to include any additional breaks in the RFC determination. *Id*. at 21-23. Plaintiff does not argue in further support of her motion, and there is no merit to Plaintiff's argument.

Preliminarily, because Plaintiff filed her disability benefits application prior to March 27, 2017, the ALJ was required to apply the "treating physician rule" which provides that "[i]f the record contains a treating physician's opinion about the nature and severity of the claimant's impairments, the ALJ must determine whether, in light of the administrative record, that opinion is entitled to controlling weight, or something less."[6] *Schillo v. Kijakazi*, 21 F.4th 64, 69 (2d Cir. 2022). *See* 20 C.F.R. § 404.1527(c)(2) ("§ 404.1527(___)") ("If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other

---

[6] The treating physician rule was abrogated by 20 C.F.R. §§ 404.1520(c) and 416.920(c), effective March 27, 2017.

substantial evidence in your case record, we will give it controlling weight.").  In

"applying 20 C.F.R. § 404.1527, there are 'specific procedures that an ALJ must follow

in determining the appropriate weight to assign a treating physician's opinion.  First, the

ALJ must decide whether the opinion is entitled to controlling weight.'"  *Schillo*, 31 F.4th

at 74-79 (quoting *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)).  Controlling

weight will be given to a claimant's treating physician's opinion regarding the nature and

severity of an impairment where the opinion "is well supported by the medically

acceptable clinical and laboratory diagnostic techniques and it is not inconsistent with

(or contradicted by) other substantial evidence in the claimant's case record."  *Id*. at 75

(citing *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) ("*Burgess*")).  Second, "'if

the ALJ decides the opinion is not entitled to controlling weight, it must determine how

much weight, if any, to give it.'"  *Id*. (quoting *Estrella*, 925 F.3d at 95).  When the ALJ

proceeds to the second step, in determining how much weight to give a treating

physician's opinion, the relevant "regulations require an ALJ to explicitly consider certain

nonexclusive factors discussed at length in *Burgess*, 537 F.3d at 129 ("*Burgess*

factors")," including "'(1) the frequency, length, nature, and extent of treatment; (2) the

amount of medical evidence supporting the opinion; (3) the consistency of the opinion

with the remaining medical evidence; and (4) whether the physician is a specialist.'"  *Id*.

at 75 (quoting *Estrella*, 925 F.3d at 95–96 (alterations and internal quotation marks

omitted) (summarizing 20 C.F.R. § 404.1527(c))).  At both the first and second step, the

ALJ must "give 'good reasons' – *i.e.*, reasons supported by substantial evidence in the

record – for the weight she affords the treating source's medical opinion.'"  *Id*. (quoting

*Estrella*, 925 F.3d at 96).  Further, upon proceeding to the second step, the ALJ "must

*explicitly* apply the factors listed in § 404.1527; the failure to do so is procedural error and subject to harmless error analysis." *Id*. (citing *Estrella*, 925 F.3d at 95-96) (italics in *Schillo*). "A court can conclude that such error is harmless if the ALJ has otherwise provided 'good reasons' for its weight assignment." *Id*. In the instant case, the ALJ did not err in declining to afford Dr. Gullickson's opinion controlling weight.

As relevant here, Dr. Gullickson's opinion includes that he has treated Plaintiff approximately every three months since 2004, during which time he diagnosed Plaintiff with cervicalgia and low back pain for which Plaintiff's prognosis was "guarded," and stated the diagnoses were supported by MRI and X-rays. AR at 1586. Dr. Gullickson reported Plaintiff's symptoms included neck pain, migraines related to cervicalgia, and low back pain with prolonged sitting, and that the impairments were expected last at least 12 months. *Id*. Dr. Gullickson did not consider Plaintiff to be a malingerer, attributed Plaintiff's anxiety to her physical impairments, and reported Plaintiff could tolerate moderate work stress. *Id*. at 1587. With regard to the functional limitations posed by Plaintiff's impairments and her ability to work in a competitive work environment, Dr. Gullickson indicated Plaintiff could sit for 10 minutes at a time and for a total of less than two hours in an 8-hour workday, stand or walk for 30 minutes at a time and for a total of two hours in an 8-hour workday, would need to walk around after 10 minutes of standing or sitting, and required the ability to shift positions at will from sitting, standing, or walking. *Id*. at 1587-88. According to Dr. Gullickson, Plaintiff would need to take 20-minute unscheduled breaks four to six times during an 8-hour workday, and must use a cane while standing or walking. *Id*. at 1588. Plaintiff could occasionally lift and carry 10 lbs., rarely lift and carry 20 lbs., and never carry 50 lbs. *Id*. Plaintiff

could rarely look down or turn her head right or left, and occasionally look up and hold her head in a static position, *id*. at 1589, and could rarely twist, crouch or squat, or climb stairs, and could never stoop (bend) or climb ladders.  *Id*.  Dr. Gullickson reported Plaintiff had significant limitations with reaching, handling or fingering but did not specify the extent of such limitations.  *Id*.  According to Dr. Gullickson, hot and cold could exacerbate Plaintiff's back pain.  *Id*. at 1590.  Dr. Gullickson also surmised Plaintiff's impairments were likely to produce "good days" and "bad days" and that Plaintiff would, on average, be absent from work more than four days per month.  *Id*. at 1589. Significantly, Dr. Gullickson stated that Plaintiff's condition has not changed and that the same limitations included in the September 16, 2020 opinion would have applied prior to December 31, 2015, *i.e.*, Plaintiff's date last insured for purposes of SSDI benefits.  *Id*. at 1590.

Although acknowledging Dr. Gullickson is Plaintiff's "long-term treating source," the ALJ did not afford Dr. Gullickson's opinion controlling weight but only "little" weight because the opinion was both unsupported by evidence in the record and inconsistent with other evidence in the record, AR at 1036, discussed *infra,* at 17-21.  Such reasons constitute the requisite good reasons for failing to grant a long-term treating source's opinion controlling weight. *See Schillo*, 31 F.4th at 76 (finding the ALJ's reasons for not affording the plaintiff's treating physician's opinion controlling weight, including that the opinion was conclusory, not helpful in assessing the plaintiff's RFC, and inconsistent with the objective medical evidence, were "good reasons" to discount the opinion).  ALJ Cordovani thus substantiated his determination not to give Dr. Gullickson's opinion controlling weight as required for the first step and the court thus proceeds to the

second step, *i.e.*, whether the ALJ correctly applied the four *Burgess* factors in determining to grant Dr. Gullickson's opinion only "little" weight.  *See Schillo*, 31 F.4th at 78-79 (explaining that once an ALJ decides not to afford controlling weight to a treating physician's opinion, the ALJ must "explicitly" review the *Burgess* factors to determine whether to give any lesser weight to the opinion).

Defendant argues ALJ Cordovani sufficiently addressed the *Burgess* factors and provided good reasons to granting Dr. Gullickson's opinion "little" weight and, instead, rely more heavily on Dr. Melamed's opinion which was verbally presented at the November 16, 2020 administrative hearing.  Defendant's Memorandum at 15-21.  The court disagrees that the ALJ "explicitly" reviewed the *Burgess* factors in determining to give Dr. Gullickson's opinion only little weight, but such failure is not fatal to Defendant's motion because the error is merely procedural and thus subject to harmless error review, *Schillo*, 31 F.4th at 75 (citing *Estrella*, 925 F.3d at 96), and, moreover, because a plain reading of the ALJ's decision establishes that despite failing to explicitly consider each of the four factors, the substance of the treating physician rule was applied by ALJ Cordovani.  *See Schillo*, 31 F.4th at 78-79 (finding that despite failing to "explicitly review the [*Burgess*] factors," the ALJ "committed a procedural error," but "examination of the record discloses that the ALJ nevertheless applied the substance of the treating physician rule" because "[t]he ALJ's written decision effectively covered the factors listed in 20 C.F.R. § 404.1572(c)(2) . . . .").

In the instant case, with regard to the first factor pertaining to the frequency, length, nature, and extent of treatment, ALJ Cordovani took note of Dr. Gullickson's status as Plaintiff's "long time treating source . . . ," AR at 1036, and the reference to

"frequent reports" in Dr. Gullickson's medical record establishes the ALJ was aware of the number of times Dr. Gullickson treated Plaintiff which, according to the medical records, shows Plaintiff saw Dr. Gullickson approximately every three to six months. *See* AR at 562-83 (office treatment notes dated to March 18, 2014); 648-57 (office treatment records dated October 22, 2014 to July 27, 2015), 899-925 (office treatment notes dated December 23, 2010 to December 6, 2016); and 1447-1517 (office treatment notes dated September 30, 2016 to September 14, 2020).  ALJ Cordovani's remarks regarding Dr. Gullickson's medical reports reflecting treatment for complaints of migraines, low back pain establishes Dr. Gullickson treated Plaintiff for her low back impairment and migraines.

As for the second factor regarding the amount of medical evidence supporting the opinion, as well as the third factor regarding the consistency of the opinion with other medical evidence in the record, the ALJ explained that Dr. Gullickson's statement that Plaintiff's condition was unchanged since 2012, and his opinion that Plaintiff had severe migraines that were disabling was inconsistent with Dr. Gullickson's treatment notes showing no issues with migraines during the relevant period and that Plaintiff reported her migraines worsened in 2019, well after both Plaintiff's alleged DOD of May 19, 2012, and her date last insured of December 31, 2015.  AR at 1036.  The ALJ also considered that Dr. Gullickson's treatment notes repeatedly show no significant findings upon examination, with Plaintiff appearing well and in no acute distress, normal neck examination, normal gait, and moving without difficulty, normal demeanor and mental status, as well as that nothing in the record supported Dr. Gullickson's assessment that Plaintiff had significant limitations with reaching, handling, and fingering.  *Id*.  These

determinations by the ALJ are supported by the court's careful review of the medical evidence.  In particular, despite Dr. Gullickson's opinion limiting Plaintiff to less than two hours of sitting, two hours of standing or walking, a need to walk for 20 minutes four to six times during an 8-hour workday, and extensive limitations to neck movements and manipulations with the upper extremities based on Plaintiff's complaints of persistent and severe low back pain, neck pain, and migraines, *see* AR at 17-21, upon examination, Dr. Gullickson repeatedly found Plaintiff was in no acute distress, and walked with a normal gait, moved without difficulty, her neck was largely within normal limits ("WNL"), with normal muscle tone and normal to palpation, and normal upper and lower extremities with muscle strength grossly intact.  *See*, *e.g.*, AR at 652-53 (October 22, 2014), 656 (July 27, 2015), 917 (June 6, 2016), 997 (June 27, 2016), 1007-08 (April 19, 2017), and 1463-64 (August 13, 2019).[7]  Despite some positive straight leg raising tests, *see*, *e.g.*, 1459 (February 11, 2020), Dr. Gullickson found Plaintiff with "no functional motor weakness or paresis [muscular weakness caused by nerve damage]," AR at 1008 (April 19, 2017), and Plaintiff denied cramping, back pain, joint pain, stiffness, swelling and weakness.  AR at 1476 (October 18, 2019).  On August 13, 2018, Plaintiff reported arthralgias (joint stiffness) and myalgia, but denied pain.  AR at 1462.

These treatment notes are consistent with diagnostic tests referenced by the ALJ, AR at 1034, including, for example, an August 7, 2014 MRI of Plaintiff's lumbar spine showing stable lumbar spine alignment, with possible mild intervertebral disc space narrowing and associated signal changes in the discs, most prominent in the

---

[7] Medical records pertaining to examinations after December 31, 2015, Plaintiff's date last insured, are referenced because Dr. Gullickson's opinion indicates that Plaintiff's condition has not changed since 2012.  AR at 1590.

lower lumbar spine.  AR at 637.  Vertebral body heights were preserved with no

compression fracture seen and no suspicious marrow lesions.  *Id*.  At L1-2, L2-3, and

L5-S1 there was no significant disc bulge central canal or neural foraminal stenosis.  *Id*.

A mild asymmetric to the left posterior disc bulge without significant central canal

stenosis and mild left neural foraminal stenosis, and no significant right neural stenosis

was observed at L3-L4, *id*., and a mild diffuse left disc bulge asymmetric to the left with

no significant central canal stenosis, mild left neural foraminal stenosis, and no

significant right neural stenosis was observed at L4-L5.  *Id*.  The radiologist's reported

impression from the MRI was "mild left neural foraminal stenosis at L3-4 and L4-5,

otherwise an unremarkable exam."  *Id*.  The ALJ also considered an October 9, 2015

MRI of Plaintiff's cervical spine, AR at 1034, that showed cervical spondylosis with mild

central spinal stenosis at C5-6 and C6-7, with foraminal narrowing at C6-7, AR at 691,

Plaintiff was undergoing chiropractic care and was advised to begin a walking program

to help with her back and neck pain.  AR at 1034 (citing AR at 728).  Nor is there any

evidence in the record that Plaintiff suffered from severe migraine headaches prior to

December 31, 2015; rather, the record contains evidence establishing Plaintiff only

reported "occasional headache" including, for example, on April 10, 2015, AR at 651,

and Dr. Gullickson did not prescribe Plaintiff medication for migraines until December 6,

2016, AR at 922-24, and did not refer Plaintiff to a neurologist for treatment of her

migraines until August 13, 2019.  AR at 1036 (citing AR at 1464).  This is consistent with

Dr. Melamed's testimony that the medical evidence establishes Plaintiff's severe

migraines were "more recent" and "arose post 2015."  AR at 1055.   Nor is there any

evidence in the record supporting Dr. Gullickson's assessment that Plaintiff's

impairments required her to take 20 minute breaks, four to six times in an 8-hour workday.  *See* AR, *passim*.  Additionally, Dr. Melamed testified that he disagreed with Dr. Gullickson's opinion that Plaintiff needed such additional breaks and that "most people who have chronic back pain do not need that degree of off time that is listed in that RFC."  AR at 1058.  Accordingly, the record established the ALJ sufficiently complied with the second and third *Burgess* factors.

With regard to the fourth *Burgess* factor pertaining to whether the subject opinion is from a treating specialist, although the ALJ does not mention that Dr. Gullickson is a specialist, the record refers to Dr. Gullickson as a D.O., but not to being a specialist, which is consistent with Plaintiff's assertion, Plaintiff's Memorandum at 13, that Dr. Gullickson is her primary care physician.  Accordingly, the record supports the ALJ's decision to give only little weight to Dr. Gullickson's opinion.

Moreover, it is the ALJ, and not a medical source, who is responsible for assessing a claimant's RFC. 20 C.F.R. §§ 404.1546(c), 404.1527(d)(2), 416.946(c), and 416.927(d)(2).  In formulating an RFC, "the ALJ is 'entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole.'" *Schillo*, 31 F.4th at 78  (quoting *Matta v. Astrue*, 508 Fed.Appx. 53, 56 (2d Cir. 2013) (brackets in *Schillo*)).  *See Monroe v. Comm'r of Soc. Sec.*, 676 Fed.Appx. 5, 9 (2d Cir. 2017) (the ALJ could rely on voluminous treatment notes that provided medical assessments of Plaintiff's characteristics relevant to her ability to work, as well as her activities of daily living, to formulate the RFC without the benefit of a medical opinion where the record contained sufficient evidence from which an ALJ could assess the claimant's RFC).  The ALJ is permitted to formulate the RFC without regard to any

particular medical opinion provided the record as a whole contains sufficient evidence from which the claimant's RFC can be determined.  *See Cook v. Comm'r of Soc. Sec.,* 818 Fed.Appx. 108, 109-10 (2d Cir. 2020)  ("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity.'" (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 Fed.Appx. 29, 34 (2d Cir. 2013)).  Nor is an ALJ required to perform an explicit function-by-function analysis before determining a claimant's RFC.  *See Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).  As such, so long as the evidence in the administrative record, including diagnostic evidence, MRI results, X-ray results, and treatment notes support the ALJ's RFC determination, it cannot be said that "no reasonable factfinder could have reached the same conclusion," so as to uphold an RFC assessment upon judicial review.  *Schillo,* 31 F.4[th] at 78 (citing *Brault*, 683 F.3d at 448).  *See also Cook,* 818 Fed.Appx. at 109 -10 ("Here, the treatment notes were in line with the ALJ's RFC determinations."); *Corbiere v. Berryhill*, 760 Fed.Appx. 54, 56 (2d Cir. 2019) (affirming the Commissioner's final decision despite the lack of a medical opinion expressly discussing plaintiff's physical limitations and relying on plaintiff's treatment notes to formulate the RFC); *Trepanier v. Comm'r of Soc. Sec.*, 752 Fed.Appx. 75, 79 (2d Cir. 2018) (the ALJ's RFC determination related to plaintiff's lifting requirement, while not directly supported by a medical opinion, was supported by an assessment from which the ALJ could infer that Plaintiff could perform the lifting requirement); *Monroe*, 676 Fed.Appx. at 8 ("Where . . . the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity," a

medical source statement or formal medical opinion is not necessarily required[.]")
(citing *Tankisi*, 521 Fed.Appx. at 34 (where "the record contains sufficient evidence from
which an ALJ can assess . . . residual functional capacity," a medical source statement
or formal medical opinion is not necessarily required)).  Here, the requisite deferential
review of the ALJ's decision establishes it is supported by substantial evidence in the
record.

In particular, the ALJ gave "significant" weight to the opinion of Dr. Melamed, an
impartial medical witness who reviewed Plaintiff's medical records and testified at the
administrative hearing.  AR at 1036.  The ALJ specifically observed that Dr. Melamed's
hearing testimony established Plaintiff was capable of a limited range of sedentary
work, lifting up to ten pounds, sitting for two to three hours before needing to change
position, occasionally reaching overhead with the left shoulder, no restrictions to
pushing or pulling, occasionally climbing stairs, and could not climb ladders, stoop,
kneel, or crawl.  *Id*. at 1033, 1036.  The ALJ further observed that Dr. Melamed's
opinion was consistent with the medical evidence of record as a whole, including Dr.
Gullickson's opinion regarding Plaintiff's lifting and carrying capability as well as
occasionally climbing stairs.  *Id*.  The ALJ also considered that the medical evidence,
including Plaintiff's 2014 MRI results, *see* Discussion, *supra*, at 19-20, supported only
mild restrictions in the lumbar spine with intermittent pain, AR at 1033-34 (citing AR at
464, 466, 637), with aggravating factors of bending, sitting, and walking, *id*. (citing AR at
464, 491).

Under the court's "very deferential standard of review," *Brault*, 683 F.3d at 448,
the plethora of evidence in the administrative record cited by ALJ Cordovani, including

treatment notes and MRI results, establishes "that no reasonable factfinder could [not] have reached the same conclusion," *i.e.*, that the ALJ's RFC assessment that Plaintiff, despite her impairments, remained capable of performing a limited range of sedentary work.  *Schillo*, 31 F.4th at 78.  Accordingly, the second ALJ decision was supported by substantial evidence in the record, requiring Plaintiff's Motion be DENIED and Defendant's Motion be GRANTED.


## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 8) is DENIED; Defendant's Motion (Dkt. 10) is GRANTED; the Clerk of Court is directed to CLOSE the file. SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:       August 23, 2023
             Buffalo, New York